UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES DONAVAN,

         Plaintiff,

 -against-              1:16-CV-924 (LEK/DJS)

SAINT-GOBAIN PERFORMANCE
PLASTICS CORP., *et al.*,

         Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

This action is one of several in this District stemming from the contamination of groundwater with perfluorooctanoic acid ("PFOA") in the Village of Hoosick Falls, New York. Dkt. No. 1 ("Complaint") ¶¶ 1–2. In his Complaint, plaintiff James Donavan alleges that defendants Saint-Gobain Performance Plastics Corp. and Honeywell International Inc. contaminated the Village's groundwater by discharging PFOA from one or more manufacturing facilities they operated within the Village. E.g., id. ¶¶ 1–7. As a result of this contamination, Donavan claims that the drinking water of Hoosick Falls became nonpotable, causing a "significant decline in value" of the home he owns with his wife. Id. ¶ 145. Additionally, he alleges that consumption of PFOA-contaminated water has caused him to suffer serious health problems. E.g., id. ¶¶ 126–27.

Presently before the Court is Defendants' motion to dismiss Donavan's property damage claims for failure to state a claim. Dkt. Nos. 22 ("Motion"), 22-1 ("Memorandum"). Donavan

opposes the Motion, and has moved for leave to amend his Complaint if it is dismissed. Dkt. No. 28 ("Opposition"). For the reasons that follow, both motions are granted.

## II.     BACKGROUND

The following facts are taken from the allegations in the Complaint, which are assumed to be true when deciding a motion to dismiss for failure to state a claim. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012).

### A.  PFOA

PFOA is a man-made chemical that was originally manufactured by the 3M Company. Compl. ¶¶ 19–20. It has been used "to make fabrics water and stain resistant," and "was a key component in the manufacture of Teflon" and "the production of Gore-Tex." Id. ¶¶ 23–25.

According to Donavan, "[t]here are a number of health risks associated with chronic exposure to PFOA, and these risks are present even when PFOA is ingested at, seemingly, very low levels." Id. ¶ 28. In fact, "PFOA has the potential to be more of a health concern because it can stay in the environment and in the human body for long periods of time." Id. ¶ 29. Donavan alleges that PFOA exposure is "associated with increased risk of testicular cancer, kidney cancer, thyroid disease, high cholesterol, ulcerative colitis, and pregnancy-induced hypertension." Id. ¶ 33.

In 2016, the U.S. Environmental Protection Agency ("EPA") issued a health advisory for drinking water with levels of PFOA over seventy parts per trillion (or ppt). Id. ¶ 37. The health advisory level (70 ppt) suggests that individuals should avoid ingesting drinking-water with greater levels of PFOA and is based on the EPA's "review of the best available peer-reviewed studies at the time." Id. "The EPA noted that peer-reviewed studies indicate that 'exposure to

PFOA over certain levels may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).'" Id. ¶ 38.

### B. The Contamination of Hoosick Falls

Hoosick Falls is a village of approximately 3,500 residents. Id. ¶ 61. Since around 1955, manufacturing facilities in and around the Village used PFOA. Id. ¶ 45. Donavan alleges that a factory at 14 McCaffrey Street is the primary source of Hoosick Falls's PFOA contamination. Id. ¶¶ 4, 39. In 1986, the McCaffrey Street facility came to be owned by AlliedSignal, which later adopted Honeywell's name after a merger. Id. ¶¶ 14, 41. Saint-Gobain acquired the facility in 1999, and owns it to this day. Id. ¶ 42.

Defendants manufactured water- and stain-resistant fabric at the McCaffrey Street site, applying a PFOA solution to the fabric in large trays. Id. ¶¶ 43–47. Defendants' employees recovered most of this solution at the end of each shift. Id. ¶ 47. However, employees also washed the trays and poured the resulting discharge down floor drains in the facility. Id. ¶ 48. As a result of this practice, PFOA flowed into the soil and ultimately the aquifer. Id.

Saint-Gobain and Honeywell also used solid PFOA to manufacture Teflon-coated materials and other products in large ovens at the McCaffrey Street site. Id. ¶¶ 51–55. In connection with this activity, Defendants' employees again discharged PFOA down storm drains, causing it to migrate into the soil and aquifer. Id. ¶ 58. Donavan also alleges that Defendants "discharged PFOA into the environment in other ways." Id. ¶ 59.

3

Approximately 95% of Hoosick Falls residents receive drinking water from the Village's municipal water system, which gathers its water from production wells, one of which is approximately 500 yards from the McCaffrey site. Id. ¶¶ 63–66. Other residents receive drinking water from private wells. Id. ¶ 72.

In June 2015, the Village conducted several tests showing high levels of PFOA in its municipal wells. Id. ¶¶ 68–71. These tests showed PFOA concentrations ranging from 151 to 662 ppt. Id. ¶ 71. As noted above, the EPA has advised against using water supplies with concentrations greater than 70 ppt. Id. ¶ 37. Tests of private wells revealed PFOA concentrations of some private wells as high as 252 ppt. Id. ¶ 73.

In November 2015, the EPA recommended that Hoosick Falls residents use an alternative water source rather than drink or cook with contaminated groundwater. Id. ¶ 74. It repeated this recommendation in December 2015. Id. ¶ 76. Shortly thereafter, Saint-Gobain began to provide free bottled water to Village residents and agreed to fund the installation of a filter system on the municipal supply. Id. ¶ 77.

On January 14, 2016, the New York Department of Environmental Conservation ("DEC") requested that the EPA investigate the origin of the contamination and add Hoosick Falls to the National Priorities List under the federal Superfund program. Id. ¶¶ 78–79. On January 27, 2016, Governor Andrew Cuomo directed state agencies to designate the McCaffrey Street facility as a state Superfund site, and announced that the State was classifying PFOA as a hazardous substance. Id. ¶¶ 82–83. The next day, the EPA recommended that all homeowners with private wells drink bottled water if their wells had PFOA concentrations of 100 ppt or

higher. Id. ¶ 84. The agency further urged all homeowners with private wells to use bottled water until their wells had been tested for PFOA. Id.

In February 2016, the DEC identified Defendants as the parties responsible for the Village's PFOA contamination. Id. ¶ 91. The same month, the New York Department of Health ("DOH") began offering free blood testing to residents of Hoosick Falls. Id. ¶ 95. The testing revealed that Village residents, on average, had PFOA blood concentrations that were eleven times higher than the national average. Id.

In early 2016, it became clear that the PFOA contamination would have additional effects on homeowners in Hoosick Falls. Local banks "indicated that they would not advance funds for a mortgage for the purchase or refinance of a home in Hoosick Falls." Id. ¶ 85. One bank official declared that his bank would not provide financing for any property connected to the Village's municipal water supply, noting that "lenders typically require that homes have access to potable water before financing is approved." Id. The same bank official explained that homes with private wells would only be eligible for financing if testing confirmed the absence of PFOA. Id. ¶ 86.

### C. Donavan's Injuries

Donavan brings two causes of action against Defendants, negligence and gross negligence. Id. ¶¶ 133–56. He alleges two main sources of harm: personal injury from his ingestion of PFOA and property damage. Id. ¶ 147. Because Defendants have moved to dismiss only the property damage claims, Mem. at 1, the Court discusses those injuries below.

Donavan and his wife own a home in Hoosick Falls, and obtain their water from a private well. Compl. ¶¶ 128–29, 145.¹ The home is "within walking distance" of the McCaffrey Street facility, id. ¶ 128, and testing has revealed PFOA in the wells of several neighbors, id. ¶ 130. However, Donavan's own well has tested negative for PFOA, id., and he does not allege that his property has been deprived of potable water. Nor does he allege PFOA ever contaminated the soil at his home or otherwise entered his property. Nonetheless, he alleges that his home "has experienced a significant decline in value due to the discovery of PFOA in the local aquifer and the designation of the local area as a State Superfund Site." Id. ¶ 145.²

### D. Defendants' Motion

Defendants argue that Donavan's "property damage claims must be dismissed because they fail to allege a physical injury and seek to recover only for economic harm." Mem. at 3. Because Donavan "specifically alleges that PFOA has not been detected in the groundwater at his home," and "seek[s] to recover for economic harm on a theory of alleged 'stigma,'" Defendants claim he has failed to state a claim for property damage under New York law. Id.

## III. LEGAL STANDARD

---

¹ The Complaint does not specify when Donavan and his wife purchased their home, but when he first moved to Hoosick Falls in 1992, he lived in a different home and obtained water from the municipal water supply. Compl. ¶¶ 96–98.

² Importantly, the Village itself was not designated a Superfund site. Both the EPA and New York State have classified the McCaffery facility, not Hoosick Falls itself, as a Superfund site. Compl. ¶ 82; Press Release, EPA, EPA Adds Saint-Gobain Performance Plastics Site in Hoosick Falls, N.Y. to the Federal Superfund List (July 31, 2017), https://www.epa.gov/newsreleases/epa-adds-saint-gobain-performance-plastics-site-hoosick-falls-ny-federal-superfund-list.

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV. DISCUSSION

### A. Donavan's Property Damage Claims

The familiar elements of negligence under New York law are duty, breach, causation, and injury. E.g., Aegis Ins. Servs., Inc. v. 7 World Trade Co., 737 F.3d 166, 177 (2d Cir. 2013); Pasternack v. Lab. Corp. of Am. Holdings, 59 N.E.3d 485, 490 (N.Y. 2016). In moving to dismiss, Defendants primarily focus on the injury prong. They argue that Donavan fails to allege

a cognizable injury to property, and so his property damage claims must be dismissed. Mem. at 3–5.

In Baker v. Saint-Gobain Performance Plastics Corp., 232 F. Supp. 3d 233 (N.D.N.Y. 2017) (Kahn, J.), which concerned a putative class action stemming from the same contamination Donavan challenges, the Court rejected Defendants' argument that property owners who alleged diminished home value due to drinking water contamination failed to state a claim for negligence under New York law. Id. at 246. Applying Baker, the Court reached the same conclusion in Benoit v. Saint-Gobain Performance Plastics Corp., No. 16-CV-930, 2017 WL 3316132 (N.D.N.Y. Aug. 2, 2017) (Kahn, J.), which involved sixteen individual actions arising from the Hoosick Falls contamination. Id. at *8–9.

At first blush, those decisions would seem to compel the same result here. Indeed, "[t]o the extent the Court finds that property owners stated cognizable property damages in the Baker action, Donavan suggests that a similar finding would also apply to this action." Opp'n at 6 n.5. But there are important differences between the allegations in Baker and Benoit and those raised here. As explained below, those differences are fatal to Donavan's property-based claims.

Unlike the plaintiffs in Baker and Benoit, Donavan does not allege that his drinking water supply has been contaminated with PFOA or that his property has been deprived of potable water. Defendants argue that his "property damage claims must be dismissed because they fail to allege a physical injury and seek to recover only for economic harm." Mem. at 3. Donavan responds that he "pleads that Defendants' PFOA has contaminated his property, along with the property of his neighbors and those in his community." Opp'n at 7. Notably, he does not cite a specific paragraph of the Complaint to support this claim. Donavan's alleged property injury is

8

based on the fact that his home "is not only nearby the McCaffery Superfund site, but it is also in the midst of properties whose wells have tested positive for PFOA." Id. at 8 n.6. Because he has not alleged contamination of *his* drinking water or the presence of PFOA on *his* property, the Court agrees with Defendants that Donavan has not adequately pleaded a claim of negligence or gross negligence for property damages. The Court reaches this conclusion because Donavan has not satisfied the duty prong, not, as Defendants urge, Mem. at 3, for failure to allege injury.

As an initial matter, the Court rejects Defendants' contention that Donavan "fails to state a claim in tort for property damage under New York law" because he "seek[s] to recover for economic harm on a theory of alleged 'stigma.'" Id. Courts applying New York law have concluded that loss-of-value damages constitute a sufficient injury in contamination suits when the plaintiff's property is directly affected by the defendant's conduct. As the Court noted in Benoit, "[w]hat Defendants dismiss as 'stigma damages have been recognized as a valid category of damages by the New York courts in environmental cases.'" 2017 WL 3316132, at *9 (quoting 87th Street Owners Corp. v. Carnegie Hill–87th Street Corp., 251 F. Supp. 2d 1215, 1223 (S.D.N.Y. 2002); see also Cottonaro v. Southtowns Indus., Inc., 625 N.Y.S.2d 773, 774 (App. Div. 1995) ("Damages from the diminished market value of real property as a result of public fear of exposure to a potential health hazard constitute consequential damages."). Donavan contends that his home has suffered a "significant decline in value" as a result of the widespread PFOA contamination in Hoosick Falls. Compl. ¶ 145. At this juncture, the Court does not doubt the seriousness of the economic injury Donavan alleges. As noted above, a plaintiff must allege more than injury to state a claim for negligence in New York. Because Donavan does not

9

sufficiently allege the breach of a duty Defendants owed *to him*, his property damage claims are subject to dismissal.

In 532 Madison Avenue Gourmet Foods, Inc v. Finlandia Center, Inc., 750 N.E.2d 1097 (N.Y. 2001), the New York Court of Appeals clarified the scope of tortfeasors' duty. There, several shopkeepers and business owners in midtown Manhattan sued after construction collapses blocked access to their buildings. Id. at 1099–1100. The issue was whether the plaintiffs, whose property was not itself damaged by the collapses, could state a claim for negligence in an attempt to recover for lost business and other economic damages. Id. at 1100–01. The Court of Appeals found that they could not, and limited recovery to those plaintiffs who "suffered personal injury or property damage" as opposed to those who suffered only a reduction in profits. Id. at 1103.

As the Court explained in Baker, "532 Madison did not . . . announce a talismanic requirement for plaintiffs to allege physical injury to their property (with courts left to determine what constitutes a physical injury). Instead, the decision concerned the existence of a legal duty between the plaintiffs and defendants." 232 F. Supp. 3d at 245 (citing 532 Madison, 750 N.E.2d at 1101); accord Benoit, 2017 WL 3316132, at *8. The 532 Madison court recognized that "[a] landowner who engages in activities that may cause injury to persons on adjoining premises surely owes those persons a duty to take reasonable precautions to avoid injuring them," but concluded that extending this duty to protect additional shopkeepers who lost profits due to road closures—shopkeepers whose properties were not themselves reached by the collapse—would unreasonably expand the scope of negligence. 750 N.E.2d at 1102–03.

The Court of Appeals in 532 Madison described how courts should determine the extent of this duty:

> The existence and scope of a tortfeasor's duty is, of course, a legal question for the courts, which "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability."

Id. at 1101 (quoting Hamilton v. Beretta U.S.A. Corp., 750 N.E.2d 1055, 1060 (N.Y. 2001)); accord In re September 11 Litig., 280 F. Supp. 2d 279, 290 (S.D.N.Y. 2003). Such a duty "do[es] *not* rise from mere foreseeability of the harm," Hamilton, 750 N.E.2d at 1062 (citing Pulka v. Edelman, 358 N.E.2d 1019, 1022–23 (N.Y. 1976)), but instead comes from an analysis "of the wrongfulness of a defendant's action or inaction" combined with "an examination of an injured person's reasonable expectation of the care owed," Palka v. Servicemaster Mgmt. Servs. Corp., 634 N.E.2d 189, 192 (N.Y. 1994) (citing Turcotte v. Fell, 502 N.E.2d 964, 967 (N.Y. 1986)).

In Baker, the Court held that "this policy determination must include a duty not to pollute a plaintiff's drinking water. Society has a reasonable expectation that manufacturers avoid contaminating the surrounding environment, an expectation that extends to the pollution of an area's water supply." 232 F. Supp. 3d at 245 (collecting cases). "It is sensible public policy to require that manufacturers avoid polluting the drinking water of the surrounding community, and nothing in 532 Madison prevents a person whose water supply was contaminated by such conduct from recovering in tort, even if she seeks economic damages." Id. at 245–46. The Court therefore denied Defendants' motions to dismiss in Baker and Benoit.

Donavan's property damage claims are premised on his allegation that Defendants breached their duties to "take all reasonable measures to ensure that PFOA Solution would be effectively contained and not discharged into the surrounding environment," Compl. ¶ 139, and "to ensure that the manufacturing processes they chose to employ did not unreasonably endanger the drinking water relied upon by residents of Hoosick Falls and the surrounding area," id. ¶ 140. Applying 532 Madison, the Court concludes that Defendants do not owe such a duty to plaintiffs like Donavan, who allege that their drinking water and property have not been contaminated. Although, the Court notes that Donavan now claims to possess sufficient facts to allege that his property has been contaminated through air emissions, Opp'n at 2–3 n.1, and that his soil has been contaminated, id. at 6. As explained below, either allegation would likely state a plausible claim for property damages under New York law.

Donavan points to Abbo-Bradley v. City of Niagara Falls, No. 13-CV-487, 2013 WL 4505454 (W.D.N.Y. Aug. 22, 2013), to argue that "community-wide property contamination" has "long been recognized by the New York courts as a basis for recovery from parties found to be responsible for . . . property damage occurring a result of the release of toxic chemical wastes or other hazardous substances into the environment." Opp'n at 5 (alteration in original) (quoting Abbo-Bradley, 2013 WL 4505454, at *7). But Abbo-Bradley concerned plaintiffs who alleged "contamination of their properties," and sought, among other remedies, "remediation of the contamination within, around, and under [their] properties." 2013 WL 4505454, at *1. Indeed, New York cases addressing groundwater contamination each involve just that: contamination of the plaintiffs' drinking water supply. See, e.g., Ivory v. Int'l Bus. Machs. Corp., 983 N.Y.S.2d 110, 114–15, 117 (App. Div. 2014) (affirming denial of a motion to dismiss negligence claims

12

based on "contaminated groundwater entering the property and soil owned by [plaintiffs]");
Murphy v. Both, 922 N.Y.S.2d 483, 484–85 (App. Div. 2011) (affirming denial of summary
judgment on negligence claims based on water contamination caused by defendant's
underground fuel tank); Fetter v. DeCamp, 600 N.Y.S.2d 340, 342 (App. Div. 1993) ("[T]he rule
has evolved that for negligence liability to ensue in cases involving the pollution of underground
waters, the plaintiff must demonstrate that the defendant failed to exercise due care in conducting
the allegedly polluting activity or in installing the allegedly polluting device, and that he or she
knew or should have known that *such conduct could result in the contamination of the plaintiff's
well*." (emphasis added)).

Donavan argues that his theory of property damages is viable because "New York courts
have recognized that lost property value due to stigma is an appropriate measure of damages."
Opp'n at 9. He relies on Criscuola v. Power Authority of State of New York, 621 N.E.2d 1195
(N.Y. 1993), where the plaintiffs successfully argued that "'cancerphobia' and the public's
perception of a health risk from exposure to electromagnetic emissions from power lines
negatively impact[ed] . . . the market value of their property." Id. at 1195. But in that case, the
power lines at issue ran "across" the plaintiffs' property, not near it. Id. at 1197; see also Scribner
v. Summers, 138 F.3d 471, 473 (2d Cir. 1998) ("Criscuola held that a land owner in a
condemnation proceeding may recover the decrease in value due to the public's fear of
something on the land . . . even if the fear is unreasonable. However, the case did not involve fear
persisting after the cause was removed."). Moreover, as Defendants note, Dkt. No. 31 ("Reply")
at 8, the "sole issue" in Criscuola was "whether the property owners were required to show the
reasonableness of the public's fear concerning high voltage towers in order to recover

consequential damages for the taking," Merrick Gables Ass'n, Inc. v. Town of Hempstead, 691 F. Supp. 2d 355, 360 (E.D.N.Y. 2010).

The Court is unaware of any New York case where a plaintiff alleged property damages based on contamination without claiming actual pollution of his drinking water or property. New York courts have engaged in "[p]olicy-driven line-drawing," and "limit[ed] the scope of defendants' duty to those who have" suffered actual contamination. 532 Madison, 750 N.E.2d at 1103. Therefore, the Court concludes that Donavan's claim for property damages premised on the contamination of his neighbors' water supply "fall[s] beyond the scope of the duty owed [him] by [D]efendants and should be dismissed." Id.

**B. Motion to Amend**

Rule 15 of the Federal Rules of Civil Procedure allows a plaintiff to amend his complaint more than twenty-one days after service of a motion to dismiss "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962); see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 603–04 (2d Cir. 2005) ("[A] Rule 15(a) motion 'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." (quoting Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987))); Dunn v. Albany Med. Coll.,

No. 09-CV-1031, 2010 WL 2326127, at *8 (N.D.N.Y. June 7, 2010) (Kahn, J.) ("Leave to amend a complaint is not automatic, and a court may deny a motion to amend for good cause 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" (quoting Foman, 371 U.S. at 182)).

Donavan argues that he should be allowed to his Complaint if the Court finds he has inadequately pleaded a property damage claim. Opp'n at 14. "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." Cowles v. Yesford, No. 99-CV-2083, 2001 WL 179928, at *3 (N.D.N.Y. Feb. 22, 2001) (quoting Chan v. Reno, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996)). Donavan claims that he now possesses sufficient facts to allege that his property has been contaminated through air emissions. Opp'n at 2–3 n.1. He also suggests that his soil may have been contaminated with PFOA. Id. at 6. It is possible for Donavan to allege sufficient facts to state a claim for negligence based on air and soil contamination, and so such an amendment would not be futile. Further, there is no indication that Donavan has unduly delayed or engaged in bad faith, and Defendants do not claim they would be prejudiced if he were to amend the Complaint.

The Court therefore finds that justice requires allowing Donavan to amend the Complaint.

## V. CONCLUSION

Accordingly, it is hereby:

15

**ORDERED**, that Defendants' motion to dismiss (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED**, that Donavan's property damage claims are **DISMISSED with leave to amend** for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that if Donavan wishes to amend his Complaint to allege claims for property damage, he must file a signed amended complaint that cures the pleading defects identified above in this Memorandum-Decision and Order **within thirty (30) days** from its filing date; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties pursuant to the Local Rules.

**IT IS SO ORDERED.**

DATED:	September 05, 2017
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge